# Supreme Court of Texas

## No. 22-0427

Texas Department of Insurance and Cassie Brown, in her Official Capacity as Commissioner of the Texas Department of Insurance,

*Petitioners*,

v.

Stonewater Roofing, Ltd. Co.,

*Respondent*

On Petition for Review from the
Court of Appeals for the Seventh District of Texas

JUSTICE BLACKLOCK, joined by Justice Boyd, concurring in the judgment.

The challenged statute, which regulates "public insurance adjusting," prohibits a contractor like Stonewater from "act[ing] on behalf of an insured in negotiating for or effecting the settlement of a[n] [insurance] claim." *See* Tex. Ins. Code §§ 4102.001(3)(A)(i), 4102.051(a). The statute also prohibits Stonewater from holding itself out as authorized to take such actions on an insured's behalf. *Id.* § 4102.001(3)(B). These prohibitions are remarkably narrow. To the extent there is any doubt about their scope, I would construe them

narrowly in order to avoid difficult constitutional questions about their compliance with the First Amendment. *See Paxton v. Longoria*, 646 S.W.3d 532, 539 (Tex. 2022).

As the Court correctly observes, Chapter 4102 of the Insurance Code does not regulate the content of Stonewater's speech. It regulates only the agency relationship between parties in a commercial transaction. I do not agree with the Court's characterization of the transaction as "nonexpressive." *Ante* at 14. Negotiation of a settlement is surely expressive. But Chapter 4102 does not prohibit a contractor from negotiating with an insurance company regarding settlement of an insured homeowner's claim for repairs. Instead, the statute merely prohibits the contractor from *acting as an insured's agent*—"act[ing] on behalf of an insured"—in those negotiations. Chapter 4102 thus regulates the legal consequences of the contractor's speech, not the content of that speech. It does so by prohibiting the contractor's speech, whatever it may be, from binding the insured or speaking for the insured. For this reason, I agree with the Court that, properly and narrowly construed, Chapter 4102 does not abridge anyone's freedom of speech. *See* U.S. Const. amend. I.

The reason Stonewater's free-*speech* claim fails is very simple, and we need not comb through a rat's nest of U.S. Supreme Court precedent to find it. The statute does not prohibit Stonewater from *saying* anything to insurance companies—other than "I am negotiating or settling this claim as an agent for the insured," or an equivalent statement suggesting that the contractor is authorized to "act[] on behalf of [the] insured." Tex. Ins. Code § 4102.001(3)(A)(i). Any such

2

statement would be false, of course, because the Legislature has outlawed such an agency relationship due to understandable concerns about the conflicts of interest that can arise between a contractor and a homeowner when an insurance company is paying for home repairs.[1]

The constitutional right of free speech is not violated when the government prohibits a party from misrepresenting its lawful role in a commercial transaction.[2] That is all this statute does with respect to Stonewater's speech, as far as I can tell. The contractor cannot tell the insurance company, falsely, that it has legal authority to act on the insured's behalf. *Id.* Likewise, the contractor cannot lead the insured to believe, falsely, that the contractor has legal authority to act on the insured's behalf. *Id.* § 4102.001(3)(B). Otherwise, the contractor can talk freely with both the insurance company and the homeowner about anything they would like to talk about.

Crucially, the contractor and the insurance company are free to talk all day long about the negotiation and settlement of an insured's claim, as long as the contractor does not "*act[] on behalf of* an insured in negotiating for or effecting the settlement." *Id.* § 4102.001(3)(A)(i) (emphasis added). This statute does not prohibit contractors from

---

[1] In a general sense, the homeowner and the contractor are aligned; both want the house to be fixed and both want the insurance company to pay for it. But conflicts of interest regarding the details can arise, of course. For example, the contractor may prefer the approach to fixing the house that maximizes its profit, but the insured may be better off with a different approach.

[2] *See, e.g.*, *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980) (holding that "[f]or commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading").

3

*speaking* with insurance companies about the scope of insurance coverage or about the details or costs of the work the contractor is doing and the insurance company is funding. Instead, the statute only prohibits a contractor from *acting* in a representative capacity, "on behalf of an insured." *Id.* As long as any understanding worked out between the contractor and the insurance company must be independently authorized by the insured—and as long as all involved know that the contractor is never "act[ing] on behalf of" the insured—then nothing in this statute prohibits contractors like Stonewater from haggling with an insurance company over the details of construction costs and insurance coverage. Few homeowners want to be deeply involved in such conversations, and nothing in Chapter 4102 prohibits contractors from discussing these things with insurance companies so the homeowner does not have to.

The one aspect of Stonewater's practice that runs afoul of the statute is its explicit promise to negotiate claims *on behalf of* homeowners. This is exactly what the statute prohibits, verbatim. Quite obviously, however, the Constitution is not offended by the statute's requirement that Stonewater refrain from falsely holding itself out as authorized to serve as the insured's commercial agent when the law prohibits such an agency relationship because of the clear potential for conflicts of interest.

Again, the statute prohibits Stonewater only from *acting* "on behalf of" the insured in the negotiation or settlement of a claim. Stonewater and other contractors are perfectly free to *speak to* the insurance company about the negotiation or settlement of a claim—or

4

about anything else. And Stonewater is free to tell homeowners that it can make their lives much easier by dealing with the insurance company regarding the claim, just as many helpful contractors (who want to please their customer and get paid by the insurance company) often do. What Stonewater may not tell homeowners is that it will act on their behalf—as their agent—to negotiate and settle their claim for them, which is something it lacks the lawful authority to do.

Apart from the question of its agency relationship with the insured, nothing else Stonewater has said or claims it wants to say is prohibited by this statute. I see no reason Stonewater cannot advertise that it has experience dealing with insurance companies and helping homeowners manage the insurance claim process. I do not necessarily read the Court's opinion to suggest otherwise, but to the extent it does, *ante* at 25–26, I disagree. The only speech prohibited by the statute would be the false statement or suggestion that the contractor is authorized to act as the insured's agent in the negotiation or settlement of a claim. If the Department of Insurance has interpreted the statute to prohibit any more than this, it has done so in error.

I do not join the Court's opinion, but I agree with its observation that the Department of Insurance only "wins the day because [Chapter 4102] operate[s] much more narrowly than Stonewater fears." *Ante* at 12. Although Stonewater's constitutional claims fail, its effort to establish the legality of its business model succeeds in many

5

respects.[3] If the Legislature had prohibited contractors from helping their customers by speaking with insurance companies about the many questions of coverage and cost that often arise during home repairs, then this would be a much different case, one in which the First-Amendment question might very well resolve in favor of Stonewater and its homeowner-customers.

* * *

The Court's opinion engages much more than I do with the notoriously labyrinthine case law on the doctrinal dichotomy between speech and conduct. Justice Young rightly calls the precedent a "mind-numbing morass." *Post* at 2 (Young, J., concurring). I do not criticize the Court for engaging with the law on the terms offered by the parties. Even so, my preference is to decide this case without perpetuating and deepening the mind-numbing morass. The way judges explain their decisions in free-speech cases need not always deal so heavily in the doctrinal mumbo jumbo with which courts have long obscured the simple and beautiful words of the First Amendment.

I respectfully concur in the Court's judgment.

James D. Blacklock
Justice

**OPINION FILED:** June 7, 2024

---

[3] I agree with the Court that Stonewater's "void-for-vagueness" claim fails. If properly and narrowly construed as described above, the statute is perfectly clear.